The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. We're glad to have you with us. Our colleague, my name is Diana Motz, and the other judge that you can see is Doug Floyd. Our colleague, Doug Rushing, is just on the phone, and she will, though, of course, participate in oral argument. We're happy to hear argument in our first case, number 20, 1743, Amazon v. W.C. Holdings. Malcolm? Good afternoon. May it please the Court, George Calhoun of IFRA PLLC for the Appellants, Brian Watson and WDC Holdings. Your Honors, the core of Amazon's complaint is a theory that the defendants conspired to fraudulently induce Amazon into real estate development or purchase contracts. Amazon admitted in the District Court that its claims rest on defendants' fraudulent inducement of Amazon's approvals of these contracts. And while the precise nature of Amazon's claims continues to shift, it's submitted its complaints several times since the granting of the plenary injunction. It's very much adopted a kitchen sink approach, but it has not brought a single fraudulent inducement claim, and it does not seek rescission of any contract. It's expressly ratified the contracts and continues to enjoy the properties that are the subject of the underlying transactions. What Amazon is seeking, at least as to the Watson defendants, is to recover all payments that were made to or from the North Star defendants in connection with the development of these properties. But there's one critical point that I don't know if came out well in the briefs, and I wanted to make sure that that was clear, is that if a plaintiff is damaged by a fraudulent inducement, as Amazon alleges, under Virginia law, they must seek either rescission or to pursue damages. And Virginia law is expressed that if a plaintiff in that situation chooses damages, the damages are the delta between the value of the property at the time the contract was made and the value of the property that it would have possessed if the alleged misrepresentations had been true. That's from the Kleiber v. Freemanson Associates case, it's 587 S.E. 2nd, 555, which this court cited approvingly in Sherman v. USA International, 851 F. 3rd, 308. And the reason that's important, Your Honors, is because, as the Virginia Supreme Court made clear, if a plaintiff does not allege fact to support a conclusion that the actual value of their property at the time they purchased it was less than the values those units would have had without the alleged fraudulent acts, then that's grounds for judgment in favor of the defendants. As in Kleiber, here, Amazon makes no such allegations. There's nothing in the very voluminous preliminary injunction record before this panel that says what the value of this property is or would have been absent the alleged misrepresentations of fraudulent acts. If Amazon paid a market price for the properties that are at issue, if it's paying a market price for rent, for properties that it is indisputably keeping and enjoying, then it's not been harmed. And that... Well, of course, Amazon doesn't have to make the claims that you would like it to make. What it's made is a claim of unjust enrichment, hasn't it? It has brought a claim for unjust enrichment, Your Honor, and it's, in our view, woefully defective for a number of reasons. So for an unjust... Excuse me. But the argument you're just making doesn't go to that, does it? It goes to all of these issues. It goes to another claim that you think there's a problem. I'm sorry, Your Honor. I couldn't hear you. I say it goes to something else that you think that Amazon has asserted and that you have a problem with. It doesn't go to Amazon's unjust enrichment claim, does it? I think it goes to all of it because their theory is... All of their claims rely on this fraudulent inducement underpinning. But if you look at just their unjust enrichment claim, Your Honor, it suffers from other defects. One, Amazon has not put forth any evidence, no contentions, that it conferred a direct benefit onto these defendants. Amazon did not pay a penny to these defendants, much less $21.25 million, which was what the district court ordered to be placed in escrow. Amazon has not made a payment. I just want to make that very clear to North Star Watson. Moreover, all the monies that were paid, North Star Watson, development fee and the like, were paid pursuant to contracts with third parties. And we've cited the law in our briefs about why that doesn't give rise to unjust enrichment claims. The funds were paid as of right. Moreover... Mr. Calhoun, I must have missed something. I thought probably the gist of the issue in this case is whether they can maintain a private civil RICO action and obtain equitable relief. I thought that's what you were fighting over. Thank you, Your Honor. That's part of the problem with the kitchen sink approach. There's so many claims floating around here. I think that issue is one that is clear. Although this court has not come down definitively on whether a private litigant is entitled to injunctive relief under RICO, it has suggested that there's substantial doubt on that issue. The district courts in this circuit have said that a private civil litigant cannot obtain injunctive relief. We think the law on that is fairly clear, and that's supported by the text of the statute, which does not provide for injunctive relief in favor of private RICO litigants. Do you think they've pledged sufficiently fraudulent practices that would support a RICO claim? No, Your Honor. We think they've got a number of deficiencies in their RICO claims. For example, they've changed over time. I don't know if Your Honors have looked at their most recent complaint, but they've alleged effectively a single-victim, limited-time, fraudulent enterprise is what their allegations are. Under this court's jurisprudence, that typically would not be enough to rise to as a civil RICO. It would be an ordinary fraud claim that would be heard in state court. We think the allegations concerning the scope of the enterprise are insufficient. They've effectively alleged a hub and spoke with no wheel to connect the alleged hubs and spokes. There's a number of problems with the civil RICO merits allegations, aside from whether even if they had alleged an appropriate RICO, that they would be entitled to this extraordinary injunctive relief. The other issue with the RICO claim, Your Honor, in addition to the... It dovetails with the availability of injunctive relief as disgorgement is also not available to a private civil RICO claimant. Frankly, Your Honor, I don't think disgorgement is appropriate to justify an injunction of this type in any case. Disgorgement is a punitive remedy. That's not appropriate for a pretrial injunction that's effectively a prejudgment attachment. Mr. Callahan, this is Judge Rushing. Just to clarify for my sake, the injunction doesn't rise or fall with the RICO claims, right? I think that's one ground for the injunction request, but the district court, I thought, said because there were equitable claims here on which there was a likelihood of success, that he could enter an injunction on that basis as well. The distinction between whether the district court was issuing this injunction based on the RICO or the equitable claims wasn't terribly clear, Your Honor. Judge Gray did reference that there were equitable claims that were brought. We don't think any of those equitable claims are anything but pretext, and we think, frankly, none of them establish a likelihood of success on the merits. That was the whole part of the discussion for Grupo Mexicano, right? There was no need to discuss that if the basis for the injunction was just RICO. The whole Grupo Mexicano discussion had to do with equitable claims. Correct, Your Honor. The big failing with respect to those equitable claims, there are technical issues that all of them fail. Counsel, excuse me just for a minute. To go back to Judge Rushing's original question, though, that the district court relied on those equitable claims as well as the RICO claim in granting the preliminary injunction, right? I think, Your Honor, that Judge Gray just relied on the equitable claims. Oh. Well, then why are we talking about equitable claims at all? Amazon has argued that it's entitled to relief under RICO, but I think it's an attempt to backfill. Well, I had thought that you had said – well, never mind. I guess it doesn't matter. I thought that you had said in response to a question from Judge Floyd that the case was all about the RICO claim. But at least the case in front of us isn't all about the RICO claim because what is in front of us is whether there's a grant of preliminary injunction or not correctly granted here, right? That's correct, Your Honor. And you're representing to us that the RICO claim was not a proper basis, was not a basis the district court gave for granting the preliminary injunction, right? The district court discussed the RICO claim and its analysis of likelihood of success, but then it stated that RUPA didn't apply because there are equitable claims present and didn't expressly say, I'm issuing this under RICO or under the equitable claims. That's why we've argued both aspects of this, Your Honor. Okay. And the reason – the main reason, although there are a number of technical reasons we think those claims are deficient under state law, under this court's reasoning in the that the equitable claims fail is that in order to obtain equitable relief, it's – the plaintiff has the burden to establish an equitable interest in a particular property. That's totally absent from this preliminary injunction whatsoever. Amazon has not pointed to some property that it paid or a corpus or a race of any sort and said, that's ours. We paid that and we shouldn't have had to. What they've done is simply say, hey, Judge O'Grady, order these defendants to marshal assets and put $21.25 million into escrow. There's been no effort to trace or identify specific property. And that's what this court said is required. Excuse me. It's not as safe. This is the U.S. Rahman versus Oncology Associates case in which this court was clear that in order to have an equitable interest, you had to identify the property in which you have equitable claims. That's totally absent here. So – and that's a necessary element of both conversion claim, the debt and new claim with respect to the unjust enrichment. Similarly, they have to identify the benefit that they conferred on the defendants. They haven't done that. Whatever sums were paid to defendants were not paid by Amazon. So if there were an unjust enrichment claim here, it's not Amazon's. And they made no effort to determine that the property that they received was not of an equivalent value to what they paid for it. I have a limited amount of time left. I did want to address the balance of harms issue because I think that's also a critical issue, Your Honors. The basis for this injunction expressly was to preserve a fund for payment of a remedy if the defendants were rendered insolvent by judgment. This court in a number of cases has said that injunctions of this sort should be narrowly tailored. The district court, in our view, failed to adequately consider the harm to the defendants. In fact, essentially said the fact that it would be rendered insolvent doesn't help the defendants. But the order itself presents a fait accompli. Unlike the limited cases where this court has approved such an extraordinary injunction, this was not simply an injunction prohibiting the defendants from transferring their assets. It ordered them to marshal assets and put it to an escrow account. That's equivalent to entering the judgment before trial and imposing the sentence before trial. Mr. Calhoun, this is Judge Rushing again. I didn't see in your brief any discussion of the bond option. It seems that a bond would require much fewer assets to be marshaled to satisfy this injunction. Can you discuss that? We were hopeful that that would be the case, Your Honor. Unfortunately, all the bonding companies were requiring that 100 percent security. So it effectively made no difference. And I don't know if you've looked, Your Honor, if you've looked at the assets. The largest assets of WTC and Mr. Watson are real estate or real estate development projects. The largest asset of WTC holdings by far are its interest in the Amazon properties. In order to find the escrow, we'd have to sell those properties, we'd not be able to get that property back. So when you say 100 percent security, do you mean they want that liquid? They don't just want a security interest in your real property? They wanted assets either deposited or secured at 100 percent level that we simply couldn't do. And we presented that evidence to Judge O'Grady. We would have loved to have been able to have had an alternative solution to this. We just couldn't make that work. Sorry, spell that out for me. When you're talking about a security interest, are you saying they wanted a security interest in your property or they actually wanted the money in hand, in which case that's not really a bond? Right. I think they either wanted money in hand or they wanted security interest that we couldn't grant because North Star doesn't directly own any of the properties. It owns the equity investors and it doesn't have the unilateral right to grant liens to third parties. So it couldn't grant outright security interest in order to secure a bond in that nature. Your Honors, my time is up. I'm happy to address any questions. I just want to be sure you've fully answered Judge Rushing's question. Judge Rushing? Yes, thank you. Okay. I don't have any questions. Judge Boyd? No. We're happy to hear from Amazon now. Thank you. Good afternoon, Your Honor. May it please the Court. Elizabeth Pepez Gibson Dunn for the Amazon Plaintiffs. I'm going to focus on the questions I think the Court raised, many of which are addressed in our briefs, but I think I can hope to put some finer point on them. But I want to begin with a critical point of agreement. Mr. Calhoun, all of his arguments support the provision on appeal. We agree that the preliminary asset relief here must balance the irreparable harm of asset dissipation against the danger, what he's called the danger of a mistake, about their client's liability. There is no such danger here. The order protects claims the district court found likely to succeed based on evidence almost never seen in a civil complaint, FBI warrants, bank records, kickback proof from the defendants, whistleblowers, criminal conspirators. That's really critical because a preliminary injunction depends first and foremost on likelihood of success. Here that's not close, it's overwhelming, and it applies to all of the claims in our complaint. I want to go, Your Honor, subject to the Court's questions, to Mr. Calhoun's arguments on fraudulent inducing... Excuse me, can you just talk a tad louder or maybe your microphone a little louder? I'm sorry, is that better, Your Honor? Yes, it is. Thank you. I'm sorry. I'd like to go, subject to the Court's questions, directly to Mr. Calhoun's arguments on fraudulent inducing RICO. Those are separate bases for our claims in the case. The same likelihood of success, the extraordinary record here supports all of them. But what really matters for the injunction is the unjust enrichment and equitable claims. That is Raman oncology. What, ma'am, what is your strongest state law equitable claim? What's the strongest one that would get you to your $21 million? Well, we have several, Your Honor. We think the strongest is unjust enrichment with the disgorgement remedy available under Rule 64, Virginia law. I want to make a point about this because the defendants today and in their reply misstate the record on this in a way that is very important. They say in their brief that we have changed course and that we did not make this argument when the injunction was entered. That is incorrect. I would refer the Court to Appendix 517 and 518. This is at the hearing before the district court where we said, and I'm quoting here, the first claim we would highlight because it is uncontested is our claim in equity for unjust enrichment at paragraphs 196 to 200 of our verified complaint. The defendants did not oppose or otherwise take issue with our likelihood of success on that claim, which is incredibly important because under the Fourth Circuit's decision in Raman oncology, that alone entitles us to the preliminary injunction. That was May 18th, Your Honor. Their brief does not acknowledge that we have never changed course and the fraud that underlies that unjust enrichment claim is grounded in Raman itself. If you look at Raman, page 497, it defines equitable property as monies obtained by fraud and assets purchased with the proceeds of a fraud. There is no question here, and the district court found, and we're here on an abuse of discretion review, that we had an overwhelming likelihood of success on the record showing that they obtained all of their business with us by fraud and specifically by paying bribes and kickbacks to corrupt insiders at our company. That is clear on the record. I can tell the court about it, but it might be easier, and if the court is inclined to see the appendix, I can show you. If you look at the appendix, we did not, as the defendants say, put all of these claims on a contract. Before the contracts were executed, these defendants came to our company and asked to do business with us through an RFP process. The record details what happened during this RFP process that shows the fraudulent inducement the court found extraordinary and likely to succeed. If you look at appendix page 1929, in the RFP, before we signed a single contract, these defendants got a template of our RFP that contained a reference to our code of conduct. It says, point blank, on page 1929 of the appendix, that they, as a bidder for our business, agreed to abide our code of conduct and not to give consideration, bribes, or anything of value to any insider under any circumstances. They made that representation. They induced us to do business before we ever signed a contract. They absolutely violated that representation, that inducement, when they paid bribes and kickbacks to our former corrupt managers, their co-conspirators. And this is documented chapter and verse in our record. They're here on an abuse of discretion. They cannot come close to showing abuse on the likelihood of success standard. The other thing I'd point out, which is really extraordinary, is that the inducement was not only pre-contract, where they agreed to abide our code of conduct, that's at appendix 1929, but if you look at appendix 2102 and 2104, you will see there in the record the copy of the lease that their CEO actually signed. You'll see his name on page 2104. Two pages prior, it's the same anti-bribery provision, the same acknowledgement of our code of conduct. There's no question. There was a fraudulent inducement of every single deal that they did with our company in this case. And that record amply supports the injunction under Roman Oncology and its definition of equitable property. Counsel, I think that I understood your colleague on the other side talking about disgorgement might not, isn't an appropriate remedy, because after all, this money is subsequently passed on to others. Maybe you can address that. Of course, Your Honor. I'm glad you asked. Thank you. A couple of points on that. Disgorgement is absolutely available as the traditional equitable remedy on the claims in our complaint, which are for unjust enrichment and constructive trust. The point about indirect payment is actually incorrect. This court in the federal insurance case, and I believe that was in 2001, it's in our brief, I think at page 36 or 37, says point blank. It is absolutely appropriate to disgorge where there's been an indirect payment channel. That's settled equity law. It's the same problem they run into under the Virginia Supreme Court case Davis in 2020 that says you can have an unjust enrichment claim alongside damages and contract claims. That's normal. We get to elect our remedy. Now, why is that fair? Why is that equitable? Equity and the disgorgement remedy targets their unjust gains. The US Supreme Court in the Lou case recently, for example, said an unjust gain or an unjust enrichment is anything the defendant got as a result of their fraud. Here they're fraud and bribes. That was not a legitimate part of our deal. That is the only thing the injunction focus is like a laser on setting aside. These defendants on the record claim over $60 million on our deals. The only thing the injunction sets aside, and I want to be really clear about what the 21.5 million represents. Five million of it is money that they admit in their opening brief at page 21. They took from unjust gains on a land sale to us that we paid for and was procured by fraud and bribes. Their co-conspirators are cooperating with the US attorney. We have letters in the record saying that's the record on that sale. Undisputed. So the five million clear. Now, what about the 16.25? They want to lump that in. There is unrebutted record evidence that the 16.25 million, the rest of the money in this appeal, represents specific unjust gains that they procured by fraud and bribes on three of our lease deals. The record on this is really robust, and I'd like to talk about it. If you look on page seven of our brief, their brief keeps talking about a pure escrow to escrow to Judge Rushing's questions. We went out of our way, as did the district judge, to say that we would entertain a bond option or some combination. We worked with them for weeks, even after the PI was entered, to try to make some accommodation. But going back to the 16.25 million, if you look at page seven of our brief and record at 619 to 20, that money is based on a very specific set of three sums. 4.15 million, 8.5 million, and 3.6 million that the defendants had earmarked as a kickback and bribe fund on three of our deals. We recovered the evidence of those numbers from our corrupt manager's laptop recycle bin as part of the investigation alongside the government's investigation in this case. They have never once rebutted that number. And again, we're up here on abuse of discretion. The reason we focus like a laser on that number, and we know under Grupo we are shooting for a corner pocket on this injunction, on this record we make that shot. We have the recovered file showing that these defendants had that money from our deals. They've never shown they didn't get it. They've never rebutted it. And it could only be an unjust gain because it was earmarked to pay kickbacks. There's nothing, there's no world in which a kickback is appropriate or just or justified. We focused only on that piece. They've never rebutted it. And Judge Motz, to your question, the only thing they've done is play word games with the law and record. Unjust enrichment by its terms is any gain that's not legitimate, and it doesn't matter if you pass it along. If that were the case, you could reward dissipation and laundering. This is the Judge Easterbrook quote in our brief. It goes back to learned hand, and it's the principle this court applied in the Raman Oncology case. If you obtain proceeds or gains by fraud unjustly, you cannot avoid a disgorgement, an equitable remedy, simply by paying them out in a bribe or using them to fund your next illicit deal. The law has never recognized that, and that is why the law is crystal clear. There is no tracing requirement in civil equity, particularly at the preliminary injunction stage. Why? First of all, common sense. At the pleading stage, which is where we are now, and again, we have evidence in this record you almost never see in a Rule 8 complaint, with the FBI warrants and the probable cause. But at the pleading stage, the defendants are in the best position to know what they did with the money. We don't have discovery. So you set aside a reserve, a conservative amount that represents an unjust gain that the record here ties tightly and on an unrebutted file to money that they took by fraud on at least three of these leases. That's crystal clear. There's no tracing requirement. We have case law in our brief from the Second Circuit that said that is so well established at the civil PI stage, the Second Circuit disposes of it in summary orders. Virginia law has said the same thing. We have case law in the brief that says there's no tracing. Indirect is fine because what we're focused on is an unjust gain. Ms. Pepez, you haven't mentioned RICO at all in your argument. My question to you is the same to your colleague. Do you believe you can maintain a private civil RICO action and obtain equitable relief? Your Honor, I say yes, we do. But to be crystal clear on the record, we don't need it here because we have an independent unjust enrichment claim under state law. But to answer your question, we do believe that's correct. We have two circuit cases and the plain text of the statute on our side. This is the section 1964A of the RICO statute. Both the Second and Seventh Circuits have recently held that in a private RICO action like this one, particularly where the district court has held this kind of likelihood of success, 1964A permits both divestment as an express statutory remedy, which encompasses the kind of divestiture or disgorgement of the unjust gains we seek in this injunction, and also expressly authorizes injunctive relief to prevent and restrain ongoing violations. These defendants have been taking the unjust gains from one lease deal in this case and reinvesting it in the RICO scheme. The district judge found likelihood of success on the merits on that record. So under both the divestment and prevent and restrain prongs of 1964A's plain text and the Second and Seventh Circuit decisions, Your Honor, respectfully, Judge Floyd, we would say yes, we can get this injunction under RICO, but we don't need it because we have the independent unjust enrichment and other state law equitable claims in this case that seek literally exactly the same claims and relief in Raman Oncology. I want to make clear on that, too, that's Appendix 62 in our original complaint had those claims on a standalone basis. You'll also see them in the first amended complaint that Appendix 1741 to 44. Nothing to do with RICO's separate claim. We get to elect the relief and unjust enrichment. RICO also supports it. And the same factual record cuts across the board on likelihood of success. Ms. Pepez, this is Judge Rushing. Just to be clear on the RICO, even if you claim that you might be entitled to injunctive relief at a final judgment, do you claim that you could get preliminary relief under RICO? That seems to cut against Section B or subsection B. You know, it's interesting, Your Honor. You mean the attorney general provision? I think that's right. Even the courts that you talk about who went with your reading of the statute say that preliminary relief is only for the attorney general. Well, I guess that's one way to read B. I don't know that it's the only or the right way to read subsection B of the statute. But no court has read it your way, right? As far as I know, Your Honor. But I don't know that they've had occasion to either. And frankly, in this case, we don't as well. Right. Because we pled under Raman Oncology, Grupo and the Supreme Court's Deckard decision, a case for a preliminary injunction based on standalone equitable claims that rest on the same basis as the RICO. So, you know, I think, Your Honor, respectfully, we could argue the textual basis for that, I don't know if the court has further questions. The one thing I wanted to address that came up in my colleague's presentation was the issue of whether we rescinded. I just wanted to be clear on the record, Your Honor. We did indeed. And our joint venture partner did indeed rescind all of the contracts with these defendants. You'll see evidence of that at Appendix 2439 and generally in Volume 5 of the appendix, where we reproduced a host of correspondence terminating and rescinding their agreements as part of these ventures. And it states in the record that the reason was fraud and willful misconduct, both in the procurement of the deals and their role in the joint venture, as well as their administration on the properties. I guess the last thing I would address that the court asked about, and Judge Rushing, I think you were focused on this rightly, and I just want to stress this. The injunction before this court is not only based on this extraordinary record, you almost never see in a civil case because of the parallel criminal conduct, but it's even more narrowly tailored than the preliminary injunction for the exact same equitable relief that this court approved in Rahman Oncology. And the reason is the bond. We bent over backwards. We talked about this at the May 18 hearing with these defendants. They don't have a right to these funds at all. When you procure money by fraud, this is what Judge Easterbrook said in Quinn v. SEC in our brief, a thief can't say I have a right to hold the loot to buy a great defense, and a criminal cannot retain unjust proceeds to try to continue an enterprise. They have no right to the money at issue in this injunction at all. Nonetheless, we heard and balanced, the district judge carefully balanced their claims of purported difficulty, and frankly, as Judge Rushing pointed out, liquidity. And we came up with and endorsed the bond auction to address that. Judge Grady actually modified the injunction at their request to allow that, and we have detailed in the appendix, including in our show cause brief, chapter and verse, that we reached out, we asked them what we could do to accommodate. They strung us along. They haven't posted a penny. And I wouldn't normally go outside the record here, Your Honor, but since Mr. Calhoun did, I just want to say since this injunction closed, the record is extraordinary, and on January 8th of this year, just two and a half weeks ago, they admitted that they have dissipated $82.5 million worth of their assets. I have that in an interrogatory response that the district court ordered, because they wouldn't tell us why they couldn't do a bond,  so respectfully, Your Honor, we've done everything we could to try to balance this. The court should affirm. Thank you very much. Sir, do you have any rebuttals? Yes, Your Honor, thank you. The last statement is, frankly, false. It's why the court doesn't go out of the record. The company has been forced to move out of some of its real estate positions. It hasn't dissipated anything. I would just specifically like to talk about the $21.25 million that my colleague tried to walk the court through a little bit and said that this is the money that subsists the injunction. She pointed you to page 282 or 283 of the appendix, which is the spreadsheet that they allegedly found in the trash bin. If you look at that, it's quite an interesting document. There are six transactions listed there. The first three rows are the North Star transactions. Why there are more than there, why the other three are there, we don't know. It sort of undercuts their theory that we were involved in a conspiracy. But in any case, if you look at that transaction, there are four columns. They have based their injunction based on the totals of the first three rows. If you look at the bottom of that, there's a share. Under any circumstance, the three rows, the totals of that would be the total amounts theoretically that would be paid on these, and the share would be the alleged amount that would be payable to their employees, I presume, based on what they're saying. But even on the face of the document, a number of the columns pertain to sale or land rebates, which are actions that have never taken place and certainly never been paid. There is simply no basis for 16.25, as a factual matter, having been paid to my clients. It didn't happen, has not happened. Amazon didn't pay these funds. They didn't come forward and say, here's the checks, we paid these funds. Those funds don't exist. They were never paid to my clients. The fact that the spreadsheet lists numbers doesn't create a fund out of thin air, which is what they're asking for. Mr. Calhoun, as to the $5 million, can't that be traced to the direct purchase enterprise, and it's in existence and a constructive trust could be imposed? My clients were paid $5 million in connection with a settlement, under a negotiated settlement with UBIT's former employees, pursuant to a mediation with a former Colorado judge. Interesting, that $5 million, the claim underlying that is that those former employees did a deal with Amazon and caused it to pay an increased price. What's interesting about that, if you look at the underlying contract, which is in the record, the increased price on that was in the contract itself. It was apparent. Amazon can't claim it was misled into paying more than some market price for the property because it was right there in the contract. And they signed it. There's no argument that they were misled into buying the property at an inflated price because if they looked at the contract, they knew, the allegation was that it was a flip transaction, but they knew the buy and sell prices of the flip because it was in the contract on its face. My clients brought a claim against UBIT, alleged that their former employees had usurped that opportunity. They should have brought it to the company and said, hey, we've got a new Amazon deal. But they did it on their own account. But more to the point, that money was spent in large part. There's not a simple... And you put all of this argument in front of the district judge, right? Maybe not as well articulated, but it was put in front of the judge, yes. And it's in the briefs before us. Because I don't remember exactly what's articulated. The same is true of the unjust enrichment claim. In their original moving papers, they didn't argue for the equitable... Their complaint did not seek equitable relief on the unjust enrichment claim. They raised that at the hearing on the preliminary injunction. So we argued that at the hearing. It's simply not true that we didn't oppose it. The complaint originally didn't ask for equitable relief in connection with that. Sir, I don't think I was very clear. Remember, you went through and said that these aren't really things. You went through the items and said that they weren't demonstrating the injunction. And you made that argument to the district judge, right? We did make that argument to the district judge. And you made it here in your briefs? Correct. I also want to point out, they said that they rescinded these contracts. They're not seeking rescission in the case. What they did is reform the contracts. They didn't return the property and say, give us our money back. They went to our equity partner and said, we want Northstar out of these transactions. So they reformed those contracts to remove the Northstar affiliates from the transactions. They're keeping the property. They didn't rescind these transactions. I want to make that very clear. And that's pertinent to the unjust enrichment. Because if you look at the value given to each side in an unjust enrichment claim, My time's up, Your Honor. But we respectfully request that you reverse the district court and vacate this injunction. Thank you very much.
judges: Diana Gribbon Motz, Henry F. Floyd, Allison J. Rushing